**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- X
UNITED STATES OF AMERICA,

        v.                                        Case No. 24-CR-408 (GHW)

ALEXIS MERCEDES,

                           Defendant.

------------------------------------------------------------------- X

## <u>SENTENCING MEMORANDUM ON BEHALF OF ALEXIS MERCEDES</u>

Dawn M. Florio, Esq
DAWN M. FLORIO LAW FIRM
488 Madison Avenue, 20th Floor
NEW YORK, NY 10022
212.939.9539
Attorney for Alexis Mercedes

Dated: January 14, 2025

To:    Honorable Gregory H. Woods
        AUSA Katherine Cheng
        US Probation Officer Jemmard N. Thomas

## TABLE OF CONTENTS

I.      RELIEF SOUGHT

II.     INTRODUCTION AND SUMMARY OF CASE

      A.  SUMMARY

         THE PLEA OF GUILTY

III.    ARGUMENT

      A.  SENTENCING PURSUANT TO 18 U.S.C. § 3553(a)

IV.     HISTORY AND CHARACTER OF THE DEFENDANT

V.      SENTENCING REQUEST

VI.     ATTACHED CHARACTER LETTERS

## I. <u>RELIEF SOUGHT</u>

Defendant Alexis Mercedes, by and through his attorney of record Dawn M. Florio, Esq., pursuant to 18 U.S.C. § 3553(a) hereby respectfully submits this Memorandum requesting the Court sentence him to a non-guideline sentence of 30 months' imprisonment, which is justified by the circumstances and factors to be considered, and is sufficient, but not greater, than necessary to comply with the purposes of sentencing.

## II. <u>INTRODUCTION AND SUMMARY OF THE CASE</u>

This Memorandum is respectfully submitted on behalf of my client, ALEXIS MERCEDES, who is scheduled for sentencing on January 22, 2025 at 11:00 AM. Provided herein is pertinent background and legal argument for your Honor's consideration in determining the appropriate sentence.

### A. <u>SUMMARY</u>

Alexis Mercedes was arrested on May 24, 2023 and ordered detained. On June 26, 2024 Alexis Mercedes was charged in a two count felony information. Count One charged Mr. Mercedes with Carjacking in violation of 18 U.S.C. § 2119(1). Count Two charged Mr. Mercedes with Hobbs Act Robbery in violation of 18 U.S.C. § 1951.

### <u>The Plea of Guilty</u>

The Defendant appeared before the Honorable Gregory H. Woods, District Judge, and pled guilty to the information on June 26, 2024. According to a written non-binding plea agreement the offense level is 24 and the criminal history category is II. The guideline range is 57 to 71 months' imprisonment. Probation recommended a sentence of 57 months, the low end of the guidelines.

## III. <u>ARGUMENT</u>

### A. <u>SENTENCING PURSUANT TO 18 U.S.C. § 3553(a):</u>

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Perez</u>, 397 F.3d 103 (2d Cir. 2005),

the sentencing court must consider all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Those factors are, in relevant part:

    (1) The nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) The need for the sentenced imposed:

        a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        b. To afford adequate deterrence to criminal conduct;

        c. To protect the public from further crimes by the defendant; and

        d. To provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) The kinds of sentences available;

    (4) The kinds of sentences and the sentencing range established for the applicable category of defendant as set forth in the Guidelines

    (5) Any pertinent policy statement issued by the Sentencing Commission;

    (6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct

    (7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

    A sentencing court is permitted to find all the facts appropriate for determining a sentence, whether or not that sentence falls within the Guidelines. See Perez, 397 F.3d at 114-15.

    In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. Pursuant to the Booker remedial opinion, and as further explained in subsequent Supreme Court cases, the sentencing court is to apply the factors as set forth in 18 U.S.C. § 3553(a). Section 3553(a), "as modified by Booker,

contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the traditional goals of sentencing." <u>United States v. Kimbrough</u>, 123 S.Ct. 558, 570 (2007) (citing sentencing goals set forth at 18 U.S.C. § 3553(a)(2)(A)-(D)).

The district court need not presume the Guidelines range is reasonable, and it must make an individualized evaluation of the facts and circumstances before it. In so doing, the sentencing court should consider the possibility that a Guidelines sentence is not just unnecessary to accomplish the goals set forth in § 3553(a), but that such a sentence would be "greater than necessary" – put differently, that a Guidelines sentence will actually thwart application of § 3553(a)'s command to impose the minimum sentence necessary to achieve the goals of sentencing. <u>Rita v. United States</u>, 127 S.Ct. 2456, 2465 (2007). The court is "free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." <u>Kimbrough</u>, 128 S.Ct. at 577 (Scalia, J., concurring).

In addition the heightened risk to inmates in federal correctional facilities during the height of the COVID-19 pandemic exposed serious problems within our prisons and jails which warrant consideration. In <u>Davis v. Ayala</u>, 135 S. Ct. 2187, 2209 (2015) Justice Kennedy, concurring, called for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant. <u>See Id.</u>. In <u>United States v. Mateo</u>, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) the Honorable Victor Marerro, a District Judge in the Southern District of New York, granted a downward departure where the defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case." Judge Marerro also stated that "potential conditions of confinement that a particular defendant is likely to encounter while in custody after sentencing" merit consideration, citing to <u>Koon v. United States</u>, 518 U.S. 81 (1996). <u>See also</u> <u>United States v. Lara</u>, 905 F.2d 599, 601 (2d Cir. 1990) (upholding a downward departure grounded on defendants potential for victimization in prison).

## IV. HISTORY AND CHARACTER OF THE DEFENDANT

Alexis Mercedes is 38 years old and was born in Venezuela, he was brought to the United States by his mother when he was a small child. He has five children. Mr. Mercedes was born to the union of Alexis Brea Mercedes and Elizabeth Mercedes. The senior Alexis Mercedes is 55 years old and works as an electrical engineer in the Dominican Republic. Elizabeth Mercedes, age 57, suffers from severe schizophrenia. His parents separated when he was young. Alexis Mercedes has completed the 10th Grade, but has not completed his high school diploma or GED. Alexis Mercedes is attempting to complete his GED while incarcerated.

Alexis Mercedes has one sister, Sharon Brea, age 39, who is a homemaker residing in Spain. He has younger paternal half siblings who he has not met. Mr. Mercedes was primarily raised by his grandmother as his mother struggled to provide him with even basic necessities due to her mental health issues. His mother was physically abusive, frequently hitting Alexis with anything in reach or her fists. When Alexis Mercedes was six years old he was sexually abused by a female babysitter who touched him inappropriately. When Alexis was sixteen years old his mother disappeared for more than a year. Alexis came home one day to find that his mother was gone. Alexis and his grandmother searched for her for more than a year without success, both believed she had been abducted or killed. During this time Alexis stayed where he could, he lived with his grandmother as well as with a series of girlfriends. When his mother went missing Alexis was forced to drop out of school, working as a barber to support himself. More than a year after her disappearance Alexis received a phone call from his grandmother reporting that his mother had been involuntarily committed to a mental health facility for more than a year. Alexis went to meet with his mother, who did not remember who he was. She is unable to provide any kind of emotional support due to her mental health issues.

Alexis has five children, ranging in age from 10 to 20 years old. He is a supportive father who does his best to provide for his children. Alexis has custody of two of his children, who lived with him prior to his incarceration. Alexis helped his fiancé, Ms. Castillo, raise her nephew when

her sister was in rehab for drug addiction. The character letters attached to this motion show that Alexis Mercedes is a valued member of his community and a good father to his children.

## A. History of Drug Abuse, Mental Health Issues, Physical Condition

Alexis Mercedes reported a history of substance abuse. Alexis began consuming alcohol at 16 years old, he was intoxicated at the time of this incident. He also experimented with marijuana starting around 16 years old. Alexis suffers from opioid addiction. From 2018 to 2020 he used six Percocet tablets per day. To fight this addiction Mr. Mercedes takes Buprenorphine. Mr. Mercedes would like to participate in the RDAP program.

In January of 2024 Alexis was brutally assaulted in the MDC, suffering nine stab and slash wounds across his body. Alexis was shot in the hand and arm in 2011.

## V. HARSH CONDITIONS AT MDC

Under 18 U.S.C. 3553(a), the District Court can consider harsh conditions of the Defendant's pre-trial confinement which may merit mitigation. Numerous District Courts have agreed that the Metropolitan Detention Center ("MDC") is a facility which is harsh and inhumane and this warrants consideration for mitigation. The conditions in this facility are shocking and unacceptable.

The Second Circuit has held that "pre-sentencing confinement conditions may in appropriate cases be a permissible basis for a downward departure." See, United States v. Francis, 129 F. Supp. 2d 612 (S.D.N.Y. 2001) (departing one level because of harsh conditions of pre-trial confinement). Likewise, District Courts have mitigated or departed downward on the grounds of the harsh conditions of the MDC and MCC for those awaiting trial and sentencing. See, United States v. Mendola, S2 03 Cr. 449. (the Court took into consideration the harsh conditions of Mendola's confinement at MCC and departed from the recommended sentence by 10 months.) See also, United States v. Mateo, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004); United States v. Hernandez- Santiago, 92 F. 3d 97, 101 (2nd Cir. 1996) (the court departed three levels based on 22 months of harsh confinement in the facility); United States v. Lara, 905 F.2nd 599 (2nd Cir. 1990) (the district court departed from a guideline of 121 – 151 months, imposing the minimum sentence of 60 months. This

decision relied in part, on consideration of the defendant's harsh confinement while awaiting trial and sentencing). See e.g. United States v. Carty, 264 F.3d 191 (2d Cir. 2001) (holding, per curium, that abnormally harsh presentence conditions can be grounds for a downward departure), United States v. Mateo, 299 F.Supp.2d 20l (S.D.N.Y. 2004) (downward departure of nine levels where denial of medical attention and sexual harassment of a female inmate "inflicted forms of pain and suffering that have effectively enhanced, to a disproportionate degree, the level of punishment contemplated to be experienced by inmates in the typical case during the period of incarceration proscribed by the Guidelines"); United States v. Speed Joyeros, 5.A., 204 F. Supp. 2d 412, 441 (E.D.N.Y 2002) (Judge Weinstein downwardly departing because of, inter alia, "the physical deterioration of the defendant" while in pretrial custody).

The Supreme Court recognized that because pre-trial confinement is an administrative, as opposed to judicial form of detention, the confinement must not rise to the level of punishment or otherwise violate the constitutional rights of those detained. See, Bell v. Wolfish, 441 U.S. 520, 537 (1979). Judge Weinstein of the Eastern District observed, "[t]he inevitable consequences of pre-trial incarceration, particularly when prolonged beyond a short period, are undeniably severe." See, United States v. Gallo, 653 F Supp.2d 320 (EDNY 1986).

In Gaston v. Coughlin, 249 F.3d 156, 164-165 (2nd Cir. 2001), the Second Circuit held that rodent infested units and the presence of human waste in and around cells can constitute cruel and unusual punishment. Former Eastern District of New York Chief Judge Jack Weinstein also determined that inhumane conditions and lengthy pre-sentence detention conditions can violate due process. The unusually harsh conditions at MDC deprive pre-trial inmates of their constitutional rights and have not kept up with contemporary standards of decency. They represent substantially harsher conditions from those the defendant would have experienced if he had been designated to a federal prison camp or low security prison. In other words, during the period that the Defendant has been incarcerated, he has been punished more than a similarly situated offender who serves the same time of detention at a minimum-security prison.

These conditions were highlighted in 2021 by the former Chief Judge of the Southern District of New York, the Honorable Judge Colleen McMahon[1]. According to a transcript of the April 29th, 2021 sentencing in <u>United States v. Days</u>, 19-CR-619 obtained by the Washington Post and New York Daily News Judge McMahon stated that there is "no excuse for the conditions" in the MDC and MCC and that the "treatment of… prisoners, the inmates, in the last 14 months have been nothing short, in my opinion, of inhumane, cruel and harsh, and unreasonably unjust."[2] Judge McMahon called the conditions "as disgusting [and] inhuman as anything I've heard about [in] any Columbian prison."[3] Judge McMahon continued saying "[t]he single thing in the five years that I was Chief Judge of this court that made me the craziest was my complete and utter inability to do anything meaningful about the conditions at the MCC… and the MDC, two federal correctional facilities located in the City of New York that are run by morons."[4]

In May of 2021 the New York Post reported on a sentencing before the Honorable J. Paul Oetken likewise highlighted the brutal and inhumane conditions at these facilities, stating that the conditions were "extraordinarily harsh" and that the frequent lockdowns impose conditions that are "basically like solitary confinement." Inmates have limited programming, next to no family visits, and severely limited ability to meet with lawyers. The Court further stated that "because it's been harsher than a usual period that it's more punitive, that it's essentially the equivalent of either time and a half or two times what would ordinarily be served… [s]o I think having served 24 months is equivalent to having served three years."[5] The conditions in the MDC are similarly severe and should be similarly credited.

---

[1] Judge McMahon stepped down as Chief Judge when she took senior status on April 10, 2021.
[2] Shayna Jacobs, Judge says 'morons' run New York's federal jails, denounces 'inhuman' conditions (May 7, 2021) https://www.washingtonpost.com/national-security/jails-run-by-morons-judge-says/2021/05/07/3b8b00c4-af46-11eb-acd3-24b44a57093a_story.html; IN HER OWN WORDS: Federal Judge slams 'morons' running NYC Federal Jails (May 7, 2021) https://www.nydailynews.com/new-york/ny-judge-mcc-mdc-20210507-nhcuujw6kjbmnm7qjus5pfrpdm-story.html
[3] Id.
[4] Id.
[5] Stephen Rex Brown, NYC federal jail is so bad inmates get 'time and a half': Judge (May 24, 2021) https://www.nydailynews.com/new-york/ny-mcc-mdc-hard-time-20210524-cwatz2asojglhm4cvjldbdx33e-story.html

In the past three years the conditions at the MDC have not improved, in fact it appears that they have devolved significantly. For example in United States v. Chavez, 22-CR-303-JMF (S.D.N.Y.), Dkt. 31, Judge Furman issued a 19 page opinion calling out the terrible conditions in this facility. Judge Furman specifically highlighted constant lockdowns which are tantamount to solitary confinement, ignored medical orders, and inhumane housing which exposes inmates to visible mold, contaminated drinking water, and vermin infestation.

Simply put the conditions that Alexis Mercedes has experienced since being remanded are unacceptable at even the best of times. The conditions that Mr. Mercedes and other inmates have described are deplorable, unacceptable, and shocking to the conscience.

The facility has frequently been on lockdown, sometimes for more than a week at a time. On these occasions inmates are confined to a 6 foot by 10 foot cell with another individual for up to 23 hours a day. On weekends inmates are frequently unable to leave their cells at all due to understaffing. One inmate reported that from when he arrived at the MDC on February 1, 2023 to April 9, 2024 the facility was locked down for 231 out of 433 days. Since Mr. Mercedes has been at the MDC there have been numerous and frequent lockdowns, as multiple people have been killed within the facility.

The MDC is dirty and inmates live in squalor. Due to the frequent lockdowns, and the fact that the facility is overcrowded, social distancing is impossible if an inmate gets sick. During the fall and winter it is cold in the facility and inmates are not given sufficiently warm clothing or blankets.

The medical department is understaffed and those staff are not properly trained. It can take an inmate more than one month to see medical staff after making a "sick call," if they see medical staff at all. Most sick calls are dismissed with minimal inquiry. The dental department is understaffed and improperly trained. Dental calls can take months to be answered. Mr. Mercedes has requested mental health services, but they have not been provided.

There is a lack of programs and educational opportunities within the MDC. The maximum level of security is imposed on pre-trial detainees.

In addition, the facility and its conditions are shocking and unsanitary. There is no washing machine or dryer readily available. Inmates may only wash their clothes and exchange bedding once per week. Inmates have reported that during the lockdowns inmates have sometimes had to go weeks without being able to do laundry, as a result they must wear dirty underwear and sleep on dirty bedding. Computer terminals are rarely cleaned. Due to limited cleaning supply access, inmates are constantly in danger of transmitting diseases in shared areas. There are mice and rodents in and around inmates' property. Rodents climb over inmates' clothing, belongings, and food often leaving feces. Cockroaches and other vermin infest the facility, food is frequently swarmed by flies, and inmates have reported finding cockroaches in their food. The food served to inmates is often expired, many times far past the expiration date. Recently the New York Daily News reported that food being served to inmates was often infested with maggots[6].

The sinks in most of the cells are broken. Toilets expel water onto the floor, leaving a foul odor and spreading bacteria. Toilets which are broken often remain unrepaired for substantial periods of time. Water is often shut off for hours at a time while inmates are locked in their cells; as a result, inmates cannot take a shower or wash their hands. Toilets frequently do not flush, requiring inmates to cover toilets with a towel to block the smell of urine and feces. When they do flush they may only flush twice every 45 minutes, which often requires inmates to deal with the smell of urine and feces even when toilets are working.

There have been numerous days where toilets were unusable due to plumbing issues. At times when the water is turned off inmates have been forced to urinate or defecate in buckets and bags. Cells have a contaminated odor of human waste and sewage; the odor causes nausea, discomfort, and vomiting. This odor makes it difficult for inmates to peacefully rest.

Showers are consistently without regulators and/or showerheads. Floors in the showers are damaged; they have sharp edges and mold. Shower curtains are rarely replaced or washed, and are

---

[6] John Annese, Maggot-infested meals being served to inmates at Brooklyn federal jail, lawyers say (March 30, 2024) https://www.nydailynews.com/2024/03/30/maggot-infested-meals-being-served-inmates-at-brooklyn-federal-jail-lawyers-say/

usually torn and covered in mildew. Tattered shower curtains allow water to splash on the floor outside the showers causing the floors within to be slippery and dangerous. Water temperature is generally uncontrollable, on occasion exceeding 170 degrees Fahrenheit; these excessive temperatures have caused burns on several occasions.

There is a lack of cleaning and hygiene supplies. Inmates are forced to purchase bars of soap to wash their hands. Toilet paper is supposed to be issued once a week, but there have been instances where weeks have gone by without the issuance of toilet paper. Cleaning supplies are rarely issued for in-cell use, and those that are issued are of poor quality. Spray bottles are rarely operable and cleaning solutions appear to be diluted. Gloves are not provided for cleaning the bathrooms, forcing inmates attempting to maintain a clean living environment to touch human waste with bare hands. Spills and flooding are cleaned up with blankets and jumpsuits that staff then require inmates to use.

There are no means of ventilation in the bathroom. Due to this lack of ventilation, condensation builds up on the ceiling and drops down onto the clothes and inmates alike. The MDC has ineffective and damaged ventilation and duct systems, limiting free flow of clean air. Vent covers are caked with dust and grime. Dust frequently falls onto inmates and their food when in common areas. Poor ventilation significantly increases the transmissibility of respiratory viruses such as COVID-19 and influenza.

Barbers do not have proper training and practice unsanitary work habits. Inmates have complained of being cut while receiving haircuts, and that barbers leave blood and skin particles between clippers and blades.

Living conditions in the MDC are unsafe and unacceptable. Cells housing two inmates on a more than temporary basis measure a mere 44 sq. ft.. Elevators are unstable and constantly in need of repair. Electrical outlets and wiring are damaged or nonfunctional. Inmates are afforded only one light, and a thin blanket even on the coldest of days or when the air conditioning (AC) is on full blast.

Likewise, there are issues with staff and staffing. During the morning and afternoon hours there have been occasions where just one Corrections Officer is responsible for 96 inmates. It is

reported that counselors knowingly allow bullying and harassment within the population. Correctional Officers make vulgar comments, including the use of racial slurs, fostering an unsafe and volatile environment. In November of 2023, as Judge Furman stated in <u>Chavez</u>, it appeared that the facility was only at 55% of its full staffing level. There is no duress alarm system in areas without consistent staff coverage in violation of Policy Statement 1600.06.

The MDC permits significantly less visitation hours than other federal facilities. This is a significant policy difference which further illustrates the inhumanity of the conditions at the MDC. Counsel believes that these facts regarding the shocking and inhumane conditions at the MDC warrant mitigation. On these grounds, it is respectfully requested that the defendant's harsh pre-trial and pre-sentence confinement be taken into consideration pursuant to 18 U.S.C. 3553(a). It has been reported that the MDC failed a recent inspection.

Additionally there are conditions specific to Mr. Mercedes which warrant mitigation. While in the MDC, in January of 2024, Mr. Mercedes was brutally attacked by three other inmates. These individuals entered his cell and attacked him with knives for no apparent reason. He suffered nine stab wounds and slashes to his arm, leg, ear, stomach, and face. After this incident Mr. Mercedes was moving slowly and in obvious pain for a number of weeks. He had bandages on his right arm and hand, slashes on the right side of his face and near his ear, a large bruise on his right temple, and numerous other visible wounds which took months to heal. When he was initially attacked Mr. Mercedes was put in a cubicle type cell, so small he could not sit or lay down, for five hours due to a lack of staff to transport him to the hospital. During this period of time Mr. Mercedes was bleeding profusely, and was given no medical attention, just a series of white t-shirts to plug up the wounds and soak up the blood. Mr. Mercedes reported that he felt lightheaded and dizzy from blood loss during this time. As a result of the attack Mr. Mercedes was placed in the Special Housing Unit (SHU) for five months, from January 18, 2024 to May 5, 2024. In <u>United States v. Roland Martin</u>, 18-CR-834, the Honorable Paul A. Englemayer considered the fact that Martin had been attacked while incarcerated in sentencing Mr. Martin below the guideline range. Judge Englemayer stated "I

would have expected I would have imposed a sentence of approximately 90 months in your case. In light of the fact of the attack on you and the effect this unintended punishment has had on you, it has made your time in prison far more trying that it was ever intended to be, and I will significantly reduce the sentence I would have imposed[,]" prior to sentencing Mr. Martin to 66 months in prison, well below the guideline range.

## VI.    SENTENCING REQUEST

Based on all the factors set forth above, I ask that the Court sentence Alexis Mercedes to a sentence of 30 months. This sentence is appropriate given the history and character of the Defendant as well as the nature and circumstances of the offense.

a.    Nature and Circumstances of the Offense, History and Character of the Defendant

18 U.S.C. § 3553(a)(1) states that the court shall consider the nature and circumstances of the offense as well as the history and character of the defendant. These factors warrant mitigation. Mr. Mercedes is in Criminal History Category II, and had a difficult upbringing. He grew up in difficult circumstances with his mother's severe mental health issues. At sixteen Alexis was essentially made homeless when his mother was forcibly institutionalized for more than a year. Growing up with a mother with schizophrenia is incredibly disruptive to a child's development.

Mr. Mercedes' disciplinary record contains an instance where he refused to accept an assignment to a unit. Mr. Mercedes does not have any gang affiliation, and did not want to go to a unit that was overrun by a gang, as he did not feel safe. Mr. Mercedes was eventually moved to a different unit, which it turned out was also a "gang unit." Mr. Mercedes' concerns regarding going to a unit with a significant gang presence were eventually proven correct, as he was stabbed nine times while in such a unit.

14

Upon information and belief it appears that a number of the tickets in his disciplinary record may eventually be dismissed. Mr. Mercedes has been working as a barber within the MDC since he arrived, his possession of hair clippers occurred during the time he was working as a barber.

b. Seriousness of Offense Conduct, Promotion of Respect for Law, Provision of Just Punishment

18 U.S.C. § 3553(a)(2)(A) states that a sentence imposed shall reflect the seriousness of the offense conduct, promote respect for the law, and provide just punishment. While below the guideline range the sentence requested is a serious sentence. Additionally a federal felony conviction carries numerous collateral consequence, including the fact that Mr. Mercedes is almost certain to be deported. As a result Mr. Mercedes is likely to spend an extended period of time in immigration detention. Mr. Mercedes was brought to the United States at a young age, if deported he will be sent to a country he has no memory of.

The requested sentence is a just punishment for Mr. Mercedes, which in turn promotes respect for the law. Respect for the law is not solely achieved through overly harsh sentences, the exercise of mercy, when appropriate, is critical to the law being viewed with respect.

c. Affording Adequate Deterrence to Criminal Conduct

Under 18 U.S.C. § 3553(a)(2)(B) a sentence must provide adequate deterrence to criminal conduct. Mr. Mercedes understands the severity of his conduct, and desires to better himself and lead a law-abiding life moving forward. Anyone looking at this case would certainly see that carjacking is a serious crime with serious consequences. Mr. Mercedes is likely to be deported as a result of this offense, and may never be able to see his children again. Mr. Mercedes was brought to the United States as a small child, he has never known another country. Additionally Venezuela is in the midst of a severe economic downturn which has caused widespread food insecurity. Millions have been forced to flee in recent years to avoid starvation.

d.  Protecting the Public from Further Crimes by the Defendant

Under 18 U.S.C. § 3553(a)(2)(C) the sentencing judge must take into account the need for a sentence imposed to protect the public from further crimes by the defendant. The requested sentence accomplishes this goal. The fact that Mr. Mercedes is likely to be deported should also be considered in the evaluation of this factor.

e.  Provision of Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

18 U.S.C. § 3553(a)(2)(D) states that the court should take into account the need for a sentence imposed to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. These needs are best served by the recommended sentence.

The correctional treatment and rehabilitation of Mr. Mercedes is best served by letting him return to the community as soon as possible. The requested sentence would serve to provide correctional treatment in the most effective manner under these circumstances. 18 U.S.C. § 3553(a)(2)(D).

f.  The Kinds of Sentences Available

Regarding 18 U.S.C. § 3553(a)(3) there is no prohibition on a sentence of 30 months.

g.  Kinds of Sentence and Sentencing Range

The guideline range for this case, as calculated by probation, is 57 to 71 months' imprisonment. Probation recommended a sentence of 57 months' imprisonment. The requested sentence is appropriate for the reasons requested above. As a result, the requested sentence would not be prohibited by 18 U.S.C. § 3553(a)(4)(A). This is not a case regarding a violation of probation or supervised release, so 18 U.S.C. § 3553(a)(4)(B) does not apply.

h.  Pertinent Policy Statements

Counsel has not uncovered any applicable policy statement under 18 U.S.C. § 3553(a)(5) that would impact the requested sentence.

i. Avoidance of Unwarranted Sentencing Disparities

The requested sentence is warranted in this case, and therefore avoids any unwarranted sentencing disparities as contemplated by 18 U.S.C. § 3553(a)(6).

j. Restitution

The restitution amount has not been determined yet. The payment of any restitution is best achieved by allowing Mr. Mercedes to return to the community as quickly as possible. 18 U.S.C. § 3553(a)(7).

## VI. CONCLUSION

We strive to strike a balance between the interests of society and the rights of the individual. Each case is different. Our Congress has made it clear that we are not to function as machines in purely technical terms. We respectfully ask this honorable Court to see this Defendant on individual terms, human terms, and sentence him accordingly. When the nature and character of Alexis Mercedes is taken into account along with the sentencing factors, and the PSR it becomes evident that a sentence of 30 months is fitting for the seriousness of the crime and is also consistent with 18 U.S.C. § 3553(a), which calls for a sentence sufficient, but not greater than necessary.

Respectfully yours,

Dawn M. Florio

Dawn M. Florio, Esq
DAWN M. FLORIO LAW FIRM
488 Madison Avenue, 20th Floor
New York, NY 10022
212.939.9539

Attorney for ALEXIS MERCEDES