P1MAMerS

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                           24 Cr. 408 (GHW)

5    ALEXIS MERCEDES,

6                                           Sentence
                    Defendant.
7    ------------------------------x

8                                           New York, N.Y.
9                                           January 22, 2025
                                            11:15 a.m.
10

11   Before:

12                    HON. GREGORY H. WOODS,

13                                           District Judge

14                         APPEARANCES

15   DANIELLE R. SASSOON
          United States Attorney for the
16        Southern District of New York
     BY:  KATHERINE CHENG
17        Assistant United States Attorney

18   THE DAWN FLORIO LAW FIRM
          Attorneys for Defendant
19   BY:  DAWN M. FLORIO
          DECLAN MURRAY
20

21

22

23

24

25
```

P1MAMerS

1           (Case called)

2           MS. CHENG:  Good morning, your Honor.  Katherine Cheng

3    on behalf of the government.

4           THE COURT:  Thank you.  Good morning.

5           MS. FLORIO:  Good morning, counsel.  Good morning,

6    your Honor.  Dawn Florio of the Dawn Florio Law Firm.  With me

7    at counsel's table is my client, Mr. Alexis Mercedes, and my

8    associate, Mr. Declan Murray.

9           Good morning, your Honor.

10          MR. MURRAY:  Good morning, your Honor.

11          THE COURT:  Thank you very much.  Good morning.

12          So we're here to conduct a sentencing hearing for

13   Mr. Alexis Mercedes.

14          I've received and reviewed the following materials in

15   connection with this sentencing:

16          First, the presentence report, which is dated

17   October 31, 2024;

18          Second, the defendant's sentencing memorandum, which

19   is dated January 14, 2025, together with its exhibits; and

20          Third, the government's sentencing memorandum, which

21   is dated January 8, 2025, together with its exhibits.

22          I've also been handed, as I took the bench, an amended

23   consent preliminary order of forfeiture as to specific

24   property.

25          Counsel, have each of the parties received all of

P1MAMerS

```
 1    these materials?

 2              MS. CHENG:  Yes, your Honor.  The only thing I would

 3    also flag, and perhaps you were getting to this, is I believe

 4    defense counsel also submitted additional exhibits to the

 5    docket yesterday as part of its submission.

 6              THE COURT:  Thank you.

 7              Thank you.  I see those.  I had not seen them before,

 8    so we'll take some time for me to review these materials, which

 9    were due a week ago.

10              (Pause)

11              Thank you.  So we just took an extended break in which

12    I reviewed the defendant's supplemental sentencing submission,

13    which was filed yesterday, January 21st, at 8:31 p.m., and I've

14    reviewed it and all of its exhibits.

15              Good.  Counsel, have each of the parties received all

16    of these materials?

17              MS. CHENG:  The government has, your Honor.

18              THE COURT:  Thank you.

19              MS. FLORIO:  Yes, your Honor.

20              THE COURT:  Thank you.

21              Have each of the sentencing memoranda been filed with

22    the clerk of court?

23              MS. CHENG:  Yes.

24              MS. FLORIO:  Yes, your Honor.

25              THE COURT:  Thank you.
```

P1MAMerS

1           Are there any other submissions in connection with

2     this sentencing?  Counsel for the United States.

3           MS. CHENG:  No, your Honor.

4           THE COURT:  Thank you.

5           Counsel for defendant.

6           MS. FLORIO:  No, your Honor.

7           THE COURT:  Let me turn first to counsel for

8     defendant.  Counsel, have you read the presentence report?

9           MS. FLORIO:  Yes.  Myself and Mr. Mercedes, we read

10    the presentence report together.  We discussed it.  We went

11    over it, and I asked him if there were any objections.  We both

12    decided and read through everything and there are no objections

13    to the probation report.

14          THE COURT:  Thank you.  So I understand that you've

15    discussed the presentence report with your client; is that

16    right?

17          MS. FLORIO:  That is right.

18          THE COURT:  Thank you.

19          Let me turn to you, Mr. Mercedes.  Mr. Mercedes, have

20    you read the presentence report?

21          THE DEFENDANT:  Yes, I did, your Honor.

22          THE COURT:  Thank you.  Have you discussed it with

23    your counsel?

24          THE DEFENDANT:  Yes, I did.

25          THE COURT:  Have you had the opportunity to review

P1MAMerS

1    with your counsel whether there are any errors in the

2    presentence report?

3              THE DEFENDANT:  Yes, I did, your Honor.

4              THE COURT:  Have you had the opportunity to review

5    with your counsel whether there are any other problems with the

6    presentence report?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Thank you.

9              Let me turn to counsel for the United States.

10   Counsel, have you read the presentence report?

11             MS. CHENG:  Yes, your Honor.

12             THE COURT:  Thank you.

13             Do you have any objections related to the factual

14   accuracy of the presentence report?

15             THE DEFENDANT:  No.

16             THE COURT:  Thank you.

17             Counsel for defendant, do you have any objections

18   related to the factual accuracy of the presentence report?

19             MS. FLORIO:  No, your Honor.

20             THE COURT:  Thank you.

21             Given that there are no objections to the factual

22   recitations in the presentence report, the Court adopts the

23   factual recitations in the presentence report.  The presentence

24   report will be made a part of the record in this matter and

25   will be placed under seal.  If an appeal is taken, counsel on

P1MAMerS

```
1   appeal may have access to the sealed report without further

2   application to the Court.

3        Now, although district courts are no longer required

4   to follow the sentencing guidelines, we are still required to

5   consider the applicable guidelines in imposing sentence.  And

6   to do so, it's necessary that we accurately calculate the

7   advisory sentencing guidelines range.

8        In this case, the defendant pleaded guilty to Counts

9   One and Two of the indictment in this case.  Count One charged

10  the defendant with carjacking in violation of Title 18, United

11  States Code, Section 21191.  Count Two charged the defendant

12  with participating in a Hobbs Act robbery in violation of Title

13  18, United States Code, Section 1951.

14       Counsel for the United States, does the government

15  agree that a two-level adjustment is appropriate here under

16  Section 3E1.1(a) for acceptance of responsibility?

17       MS. CHENG:  Yes, your Honor.

18       THE COURT:  Thank you.  And is the government moving

19  for an additional one-level adjustment under Section 3E1.1(b)?

20       MS. CHENG:  Yes.

21       THE COURT:  Thank you.

22       I calculate the guidelines in a manner consistent with

23  the plea agreement and the presentence report.  The applicable

24  Guidelines Sentencing Manual is the November 1, 2024 Sentencing

25  Guidelines Manual.  Pursuant to Sections 3D1.1 and 3D1.2,
```

P1MAMerS

Counts One and Two are grouped.  Because the highest offense
level is produced by Count One, carjacking, I look to Section
2B3.1 to determine the base offense level.  Pursuant to Section
2B3.1(a), the base offense level for this offense is 20.  A
five-level increase is warranted because a firearm was
brandished during the robbery pursuant to Section
2B3.1(b)(2)(C).  Because the offense involved carjacking, an
additional two-level increase is warranted pursuant to Section
2B3.1(b)(5).  Because the defendant has demonstrated acceptance
of responsibility for his offense through his plea allocution,
I apply a two-level reduction pursuant to Section 3E1.1(a).
Upon motion by the United States, an additional one-level
reduction is warranted under Section 3E1.1(b).  As a result,
the applicable guidelines offense level is 24.

        The defendant has three criminal history points
resulting from two convictions within the applicable time
period.  On May 6, 2015, the defendant was sentenced to
conditional discharge after being convicted of assault in the
third degree, yielding one criminal history point.  On
February 28, 2022, the defendant was sentenced to 364 days in
jail after being convicted of possession of a controlled
substance or controlled substances, yielding two criminal
history points.

        As a result, the defendant has three criminal history
points and is in criminal history category II.

P1MAMerS

1          While I recognize I have the authority to depart, I do

2     not find any grounds warranting a departure under the

3     guidelines.

4          In sum, I find that the offense level is 24 and that

5     the defendant's criminal history category is II.  Therefore,

6     the guidelines range is 57 to 71 months' imprisonment.

7          Counsel, does either party have any objections to the

8     sentencing guidelines calculation?

9          MS. FLORIO:  No, your Honor.

10          MS. CHENG:  No, your Honor.

11          THE COURT:  Thank you.  Neither counsel has any

12     objections to the sentencing guidelines calculation.

13          Let me turn to counsel for defendant.  Counsel, do you

14     wish to be heard with respect to sentencing?

15          MS. FLORIO:  Yes, your Honor.

16          THE COURT:  Thank you.  Please, go ahead.

17          MS. FLORIO:  Your Honor, our request is that Alexis

18     Mercedes be given a sentence of 30 months.  That is sufficient

19     but not greater than necessary to accomplish the goals of

20     sentencing and is in line with the statute.  Probation

21     recommended 57 months, which is at the low end of the

22     guidelines.

23          There have been a number of letters of character

24     submitted on behalf of Alexis Mercedes.  They speak to the fact

25     that Alexis is an asset to his community and he was always

P1MAMerS

1   trying to do the right things for those around him.  I just

2   want to point out to the Court all of the people that are

3   present.  His children's mother, his fiancé, all of his family

4   members have come to support him today.

5          We do not seek to minimize Alexis's conduct here.  He

6   takes full responsibility and he is very, very remorseful.  But

7   we do want to make it clear that this particular offense is a

8   series of very poor decisions on behalf of Alexis Mercedes.  It

9   is our belief that his behavior was reckless, out of control,

10  and it was impacted by alcohol.  He loves his fiancé Catherine,

11  who is present in court, very, very much.  They were having

12  some difficulties.  She was actually in California.  Normally

13  he is home every night caring for his children.  They had --

14  they were estranged.  She was in California and he went out

15  with his female cousins.  And it was a silly thing to do.  It

16  was actually very stupid on his part.

17         He got very, very drunk.  And as the Court knows, he

18  has a Percocet addiction.  And his behavior was not that of an

19  intelligent, tempered young man, but that of someone who was

20  effected by the alcohol.  Which is very, very dangerous.

21  Extremely dangerous.  But is really not reflective of who

22  Alexis Mercedes is.

23         He is the sole caretaker of two of his children.  He

24  is a son who takes care of his mother.  He has five children

25  who he emotionally and financially supports who are really

P1MAMerS

going to have a very hard time and have had a very hard time

living life without Alexis.

Additionally, Alexis Mercedes will likely suffer

serious immigration consequences.  Likely he will be deported

because of his status, and excluded probably from ever entering

again.  This will mean Alexis will be taken from his children

and be sent back to a country he has no memory of, where he has

never been since he was a small child, a country which has a

crippled economy where millions have been forced to flee the

country or starve over the past few years.  He will

additionally face an extended period of time in immigration

detention waiting for his adjudication.

Additionally, the struggles that Alexis has had as a

child should be taken into account.  Alexis grew up really in I

would say not even a single-parent household.  He grew up

without any intervention from his dad.  No relationships -- no

real relationship with his dad.  And he grew up with a mother

who is severely mentally ill, to the point she can barely care

for herself, let alone care for Alexis.  He was sexually abused

at the age of six.

And at the age of 16, still not having the guidance,

living -- coming from a neighborhood that was very violent, he

came home from school one day to find that his mother was gone.

With no means of support, he had to drop out of school to make

money to survive.  Sleeping on couches, staying with his

P1MAMerS

grandmother, a woman he was dating at the time.  And he looked

for his mother for over a year and didn't know if she was dead

or alive, if she was kidnapped.  And this was so traumatic for

Alexis, that he really still to this day is traumatized by his

mother leaving him, his abandonment issues.  When he went to --

finally when his grandmother told him that she was hospitalized

against her will, he went to visit her.  And as a young child

who really cared for his mother and really was her caretaker as

a small child, couldn't believe that his mother didn't even

know who he was.  And she was in the hospital for a very, very

long period of time.  So he really had no role models.  He had

no male figures that he could look up to and he was really an

orphan.  Thank God for his grandmother who was able to care for

him at some points.

        Now, the sentence serves a deterrent purpose of the 30

months.  Alexis has suffered immensely since being

incarcerated.  He was brutally assaulted while within the MDC.

He was stabbed nine times and forced to spend months in the SHU

because there was difficulty placing him due to the attack.

And I remember seeing him right after he had been assaulted.

And he had -- and I don't know if the Court can see, but he has

still scars on his face.  He's not in physical pain but those

are scars that, you know, he'll have to live with the rest of

his life.  And it was a horrible, horrible experience.  And

because he didn't want to go to a gang house, a lot of times

1 they were trying to put him in a particular house and he

2 refused to go because he knew that he could be assaulted again.

3 He was just an individual who was trying to stay out of the way

4 and just do his time and be productive.

5      As the Court knows, the jail is full of violence,

6 there's a lot of gang activity, a lot of stabbings.  And,

7 unfortunately, Alexis was a victim to being stabbed nine times.

8 And this serves -- the sentence of 30 months serves as general

9 deterrence as well.  Nobody will look at Alexis Mercedes and

10 say that what he has gone through, and determine anything other

11 than crime does not pay.  This is especially true when the

12 conditions within the MDC are taken into account, specifically

13 with Alexis being in the SHU for a lot of his time there.

14 Being on lockdowns, just having witness people being killed in

15 jail.

16      While the government makes allegations of additional

17 unproven conduct, Mr. Mercedes has a single narcotics

18 conviction for which he received probation and 364 days in

19 jail.  And when this is done, when he's done his time, he's

20 going to have to go back to New Jersey and face the violation

21 of probation.  So that is what is reflected in the probation

22 report that he didn't return back to court.  That was because

23 he was in MDC.  And I represent him also on that case and also

24 I've represented him on the other case in New Jersey.  And the

25 judge had issued a warrant for him because there was no way to

1    bring him back to New Jersey.

2           So I just wanted to point out that Mr. Mercedes, while

3    he has been in MDC, has endeavored to get his GED.  He's still

4    working on it.  He has not gotten his GED yet.  But this is

5    something that he's very proud of because he doesn't have his

6    GED or his high school education and he dropped out of school

7    when he was in the tenth grade to really -- to support himself

8    by becoming a barber.  The various letters of character are

9    important to note here as well.

10           Now, you see the crime that Alexis Mercedes committed

11   is not who Alexis Mercedes is.  That behavior was so abhorrent

12   from who he really is as an individual.  Now, you can look at

13   Mr. Mercedes, he has a lot of tattoos and, you know, you can

14   say, well, he looks like a troublemaker.  Alexis is the best

15   father in the world.  And I don't say that, you know,

16   cavalierly.  He loves his children.  At some point he -- not

17   only does he support all his children.  He takes his children

18   on family vacations.  His life is about his children and about

19   his family.

20           Alexis received numerous character letters ranging

21   from family and friends to an artist he managed and to a

22   promoter that really helped him a lot and they did a lot of

23   community work together.  It shows that he is held in high

24   esteem in his community and shows he has a strong support

25   structure upon release.  Additionally, the fact that so many

P1MAMerS

people are present in court today shows how dedicated the

people are around him and also to Alexis's success.  And in

fact, all of his children's mothers, you know, they're either

here or wrote a letter in support.

          Mr. Mercedes is asking that you give him a chance to

be given a sentence of 30 months so that he can return to his

family, return to supporting them lawfully, and put this awful

period and any kind of criminality behind him.

          The mitigating factors that may warrant a sentence

below the guidelines are simply that my client has a very bad

addiction to Percocets.  His single-parent upbringing, his

tumultuous childhood, his mother's mental illness of

schizophrenia, and the fact that he is a father to five

children who are distraught and are not doing well in school.

One of his children is being bullied because he's not there.

          He loves his family.  He loves his children.  And I

have spoken to Mr. Mercedes many times throughout this ordeal

that he's been in MDC.  He is so embarrassed by his behavior.

And he will address the Court.  But he is very remorseful for

his actions.  Not only to the cab driver who he scared and, you

know, took his car for a limited period of time.  I think this

was a situation where if it were not for Alexis Mercedes being

drunk or high, this never would have happened.  We understand

that is so dangerous, getting in a car if you are drunk.  But

thank God the car was parked.  And Mr. Mercedes absolutely took

1    that cab.  He drove it away.  But he did not have any intention

2    of actually keeping that cab.  He panicked and he absolutely is

3    sorry for everything that he has done.  We know this is a very

4    serious crime, your Honor.  But we just ask that you have mercy

5    on our client.  Thank you.

6             THE COURT:  Thank you.

7             Let me turn to you, Mr. Mercedes.  Mr. Mercedes, do

8    you wish to make a statement to the Court?

9             THE DEFENDANT:  Yes.

10            THE COURT:  Thank you.  Please go ahead.

11            MS. FLORIO:  Would you like him to stand up?

12            THE COURT:  However you feel most comfortable,

13   Mr. Mercedes.

14            THE DEFENDANT:  I express my deepest gratitude for the

15   opportunity to address the Court and share my reflections,

16   growth, and remorse for the crimes that I have been accused of.

17   I fully understand the severity of these actions.  I take full

18   responsibilities for my involvement.  In a heavy heart and

19   sincere regret that I acknowledge the harm I caused, not only

20   to the victim, to society at large.  I'm truly sorry.  I know I

21   must do better.

22            My time in jail has been humbling, eye-opening

23   experience during this period of confinement.  I had the

24   opportunity to deeply reflect on my past choices, the impact

25   they had on others, and the person I want to become moving

P1MAMerS

forward.  Jail has forced me to confront my wrongdoings, and

more importantly, the man I needed to be for my family and my

community.  I have learned that nothing is more important than

taking responsibility for one's actions and making the

necessary changes to be positive, a positive influence on those

around me.

One of the most pressing reasons for my plea of

leniency is my mother who suffers from schizophrenia.  I am her

only child and I have been her primary caregiver for most of my

life.  And in my absence, her conditions have worsened

significantly.  I feel an immense sense of urgency to return to

her care as she is struggling without my presence and support.

Knowing that I'm unable to care for her has caused me

tremendous pain.  I hope I have a chance to be there for her

again.

In addition to my mother, my five children have also

deeply affected my incarceration.  Two of my children were

living with me before my arrest, and they continue to wait for

my return.  All of my children have been impacted emotionally

and some are now seeking therapy to cope to the trauma of my

absence.  As a father, I feel an overwhelming responsibility to

be there for them, to guide them, to provide them with the

stability and love they need.  And research -- the importance

of having a father in they home.  I'm determined to be that

positive figure in my children's life.  I understand now more

than ever how critical my role is in their development and well-being.

I have also endured significantly challenges while being incarcerated in MDC Brooklyn.  Life in that facility have been brutal, both physically and mentally.  The conditions are difficult and have been traumatic.  I experienced more than I could ever imagine.  This time has further opened my eyes to the importance of change, both in my own life and within the system itself.  Despite these hardships, I have sought better, to do better myself through therapy and personal reflection.  I want to continue therapy as it helped me understand the past behavior and given me tools to be a better father, son, and man.

I'm passionate about music.  During my time here, I found solace in working with music, artists, and discovering new talent.  This passion have renewed my entrepreneurial spirit.  Prior to my incarceration I begun investing in small businesses, a trucking company.  Along with my wife of ten years, I own and manage a hair salon known as HAIRSPA, and now known as Ombodyandsoul, which has also served an online platform for healing in our community.  My goal is to continue these ventures upon my release, working alongside with my family in our small business endeavors.  I am determined to leverage this opportunity, not only for my own growth but also to contribute to society in a positive and meaningful way.

P1MAMerS

1          I know I cannot undue the past, but I'm truly

2    committed to changing my future.  I'm asking for a second

3    chance, not only for myself but for my family.  I want to show

4    them that I can be the man they need and the man of integrity

5    and strength.  I want to continue pursuing therapy, using my

6    passion for music and business to create a better life for

7    myself and those around me.

8          Thank you for considering my letter, and I'm deeply

9    remorseful for my actions and hopeful that I can earn the

10   opportunity to reintegrate into society as a better,

11   responsible individual.  I'm determined to prove that I can

12   make a positive contribution and ensure the safeties and

13   well-being of those around me.

14          Thank you, your Honor.

15          THE COURT:  Thank you very much.

16          Let me turn to counsel for the United States.

17   Counsel, does the government wish to be heard with respect to

18   sentencing?

19          MS. CHENG:  Yes, briefly, your Honor.

20          We believe that a sentence within the guidelines range

21   followed by three years of supervised release to include all

22   the conditions and special conditions recommended by the

23   probation office is appropriate based on the nature of the

24   offense here and also the defendant's criminal history.

25          This case involved a violent outburst.  We're very

P1MAMerS

1    fortunate that no one was severely injured.  But the fact that

2    the defendant's impulse immediately after rear ending another

3    vehicle was to escalate to violence and forcibly rob the victim

4    of his vehicle is very dangerous and troubling.

5           There was no threat to the defendant.  But suddenly,

6    without any provocation, Mr. Mercedes punched the victim in the

7    face, threw a bottle at him, and displayed a firearm.  When the

8    victim immediately retreated to call 9-1-1, Mr. Mercedes got

9    into the victim's vehicle and almost ran over the victim as

10   Mr. Mercedes was driving away.

11          Then he drove immediately to the nightclub to party.

12   While the crime here is based on a single incident.  This is

13   not the defendant's first time being involved in violence and

14   dangerous criminal activities.  Your Honor had noted he has a

15   prior criminal conviction for punching and kicking a victim in

16   the face in 2015.  And most recently in 2019, he was arrested

17   and found with three firearms and over 2 pounds of heroin.

18   Which itself, are indicative of his significant drug dealing

19   activity.

20          Despite receiving a tremendously lenient sentence of

21   approximately one year for that drug-related conduct, which I

22   understand from the state prosecutor was due largely to the

23   COVID-19 crisis at the time, Mr. Mercedes did not take that

24   opportunity to become a completely law-abiding citizen because

25   he engaged in this offense.  More than that, he committed the

P1MAMerS

1    instant offense while he was on probation for that New Jersey

2    drug conviction, which highlights the danger that he poses and

3    the disregard that he has for the community, the law, law

4    enforcement, and the Court.

5         I just want to address briefly the conditions at MDC

6    since that featured prominently in the defense submission.

7         The government acknowledges that there have been

8    incredibly difficult conditions there.  But it's an issue, as

9    your Honor likely knows, that is receiving a lot of attention

10   and focus and additional resources to fix.  To the extent the

11   Court is inclined to consider the conditions at MDC as part of

12   the sentence that it imposes, I want to provide the Court with

13   the most recent information that is available to the government

14   regarding these conditions.

15        Over the past year there have been many notable

16   improvements.  It has -- MDC has significantly increased its

17   staff by hiring several dozens of individuals, including

18   long-term staff and medical staff.  It's implemented a new

19   tele-health program and other medical initiatives to facilitate

20   more timely care for inmates using additional medical providers

21   in the community.  It has been undergoing significant

22   structural repairs to fix the plumbing, temperature control,

23   add additional security cameras, and also make significant

24   repairs within inmate cells.

25        And, in addition, my understanding is that MDC has

P1MAMerS

identified the source of the food contamination issues and

addressed it and has also replaced the ovens in the food

services area.

In addition, as your Honor may be aware already, my

understanding is that no defendant can be designated to serve

his sentence at MDC during this period.  And so once he is

sentenced, he will be transferred elsewhere.

Ultimately, taking into account all of the sentencing

factors, including the mitigating factors identified in this

defense submission, including his tremendous family support and

his difficult family background, the government still believes

that a guideline sentence is warranted here.

Thank you.

THE COURT:  Thank you.

So, counsel, is there any reason why a sentence should

not be imposed at this time?

MS. FLORIO:  No, your Honor.

MS. CHENG:  No, your Honor.

THE COURT:  Thank you.  I'm now going to describe the

sentence that I intend to impose, but counsel will have a final

opportunity to make legal objections before the sentence is

finally imposed.

As I've stated, the guidelines range applicable to

this case is 57 to 71 months' imprisonment.  I have considered

the guidelines range.  Under the Supreme Court's decision in

P1MAMerS

*Booker* and its progeny, the guidelines range is only one factor
that I must consider in deciding the appropriate sentence.  I'm
also required to consider the other factors set forth in 18,
United States Code, Section 3553(a).  These include:

First, the nature and circumstances of the offense and
the history and characteristics of the defendant;

Second, the need for the sentence imposed to (a)
reflect the seriousness of the offense, to promote respect for
the law, and to provide just punishment for the offense; (b) to
afford adequate deterrence to criminal conduct; (c) to protect
the public from further crimes of the defendant; and (d) to
provide the defendant with needed education or vocational
training, medical care, or other correctional treatment in the
most effective manner;

Third, the kinds of sentences available;

Fourth, the guidelines range;

Five, any pertinent policy statement;

Sixth, the need to avoid unwarranted sentence
disparities among defendants with similar records who have been
found guilty of similar conduct; and

Seventh, the need to provide restitution to any
victims of the offense.

Ultimately, I'm required to impose a sentence that is
sufficient but no greater than necessary to comply with the
purposes of sentencing that I mentioned a moment ago.

P1MAMerS

1          Now, I've given substantial thought and attention to

2     the appropriate sentence in this case considering all of the

3     3553(a) factors and the purposes of sentencing as reflected in

4     the statute.

5          Based on a review of all of the factors, which I'm

6     going to discuss in more detail in a moment, I intend to impose

7     a guidelines sentence of 60 months' incarceration for each of

8     Count One and Count Two to be served concurrently.  The term of

9     incarceration will be followed by three years of supervised

10    release subject to the mandatory and special conditions

11    described in the presentence report.  I do not expect to impose

12    a fine.  I expect to issue an order of forfeiture and I will

13    hear from the government regarding the need for payment of

14    restitution.  I will impose the mandatory fee of $100 for each

15    of the crimes of conviction.

16         I'm going to discuss each of these issues with more

17    specificity after I've reviewed my reasoning.  So let me start

18    with the nature of Mr. Mercedes's offense.

19         Mr. Mercedes's offense was very serious.  Remarkably

20    serious.  Mr. Mercedes was out driving, driving with others in

21    an Audi.  The vehicle that he was in hit his victim's vehicle

22    from behind.  The driver of that other vehicle, Mr. Mercedes's

23    victim, both exited their vehicles, as did several women who

24    were in the Audi with Mr. Mercedes, who counsel has described

25    as Mr. Mercedes's cousins.  Mr. Mercedes suddenly punched his

P1MAMerS

1    victim in the face.  Mr. Mercedes threw a bottle at him.   And

2    Mr. Mercedes displayed a firearm at him.   The victim retreated.

3    Mr. Mercedes did not get into the Audi and drive away.

4    Instead, Mr. Mercedes got into his victim's car and drove it

5    away.

6          And in doing so, he almost ran over his victim who was

7    trying to, having retreated, call 9-1-1.  One of the female

8    passengers in the Audi got out of that car and drove it away.

9    So I just note that before this incident happened, Mr. Mercedes

10   got a firearm to display.  So the conduct here was presaged by

11   his decision to have a firearm.

12         A week after the carjacking, the victim's vehicle was

13   found in the NYPD, when the NYPD found it and then they -- the

14   NYPD canvassed the area.  Eventually they found video from the

15   club near where the vehicle was found.  It showed Mr. Mercedes

16   later that same night, about 20 minutes after the carjacking,

17   and it showed him at the club partying shortly after assaulting

18   and robbing his victim and shortly after brandishing a firearm

19   at this innocent victim.

20         When law enforcement searched Mr. Mercedes's home,

21   they found the clothing that he was wearing during the

22   hijacking.  They also found a 9-millimeter handgun, together

23   with ammunition.

24         So Mr. Mercedes had a handgun in his home.  So this

25   was an incredibly serious offense from my perspective.

P1MAMerS

1    Mr. Mercedes acted violently.  He displayed what appears to be

2    lack of concern for his victim, nearly running him over.

3    Minutes after engaging in this violent crime, showing another

4    person a gun, punching him, throwing a bottle at him,

5    Mr. Mercedes was at a club out to party.

6         This is a serious offense.  Mr. Mercedes was born in

7    October 1986 in Venezuela.  Mr. Mercedes does not have legal

8    status in this country.  He is, at this point, 38 years old.

9    He's mature enough to be held to account for his decisions.

10   Mr. Mercedes's father lives in the Dominican Republic, although

11   I understand that Mr. Mercedes has not had contact with him

12   recently, although it's reported that his father is aware of

13   this conviction.

14        Mr. Mercedes's mother lives in Manhattan.  As counsel

15   has described, she has serious mental health issues.  Because

16   of her mental health issues, Mr. Mercedes describes in the PSR

17   his relationship with his mother is not great, but I completely

18   accept all of his statements here about his commitment to

19   caring for her and that he's an important support for his

20   mother.

21        Mr. Mercedes has one sibling who lives in Spain.  He's

22   not in contact with her.  And Mr. Mercedes's parents separated

23   when he was very young.

24        Mr. Mercedes's mother struggled, as counsel for

25   defendant described, to provide for him because of her mental

P1MAMerS

health issues.  And unfortunately she was also abusive and
Mr. Mercedes was raised in a household that was not completely
safe for him.

Mr. Mercedes's mother disappeared for about a year
when he was 16 years old as counsel described.  And at that
time, he lived in his apartment with his grandmother, who as
counsel has described, was blessedly there to support him,
together with some girlfriends.  Mr. Mercedes stopped attending
school to become a barber during that period in order to
support himself because his mother had basically disappeared.

As we've heard, Mr. Mercedes has five children ranging
in age from 19 to 10.  Each of the children has a different
mother.  Mr. Mercedes has a loving relationship with all of his
children and he's provided all of them with financial support
when needed.  He's described he's been in a relationship with
his current partner for the last nine years.  She describes the
defendant as loving, caring, and charming.

I have read all of the letters submitted on behalf of
Mr. Mercedes and I understand that many of them view him in the
same light.  His cousin, for example, describes him as "a true
empath with a heart of gold."  And I read the letters from his
partner and from his children, and I've heard his remarks
today, and I accept and believe that Mr. Mercedes is committed
to his children and to his family, and that this criminal
conduct is not all of Mr. Mercedes, that he has a good side

1    which is experienced by his family members and he's got a very

2    valuable commitment to them.

3            Mr. Mercedes is really, I would say, blessed with good

4    physical health.  I say blessed in part because he has been --

5    his body has been marked by violence.  He was shot in the left

6    hand and right arm in 2011, but fortunately is not suffering

7    any lingering issues from it.  And most terribly, as counsel

8    eluded to, Mr. Mercedes was recently assaulted while in BOP

9    custody and was stabbed nine times.  Amazingly, he has

10   recovered from that assault and reports no continuing health

11   concerns as a result of it.  Although I would expect that he

12   would be traumatized as a result of the attack, which should

13   simply not have happened.

14           Mr. Mercedes also has asthma, which is being treated.

15   Mr. Mercedes has no history of mental health issues.  He does

16   have a history of substance abuse issues.  And counsel

17   described him as having an addiction with respect to Percocet.

18   The PSR reports that he experimented with marijuana when he was

19   16, but stopped, and that he used Percocet tablets between 2018

20   through 2020.

21           Mr. Mercedes left high school in tenth grade.  Since

22   2013 the defendant has operated a record label recruiting hip

23   hop artists.  I've seen the letters submitted to me about his

24   business.  And I appreciate Mr. Mercedes's passion for music

25   and the art and the entrepreneurial spirit that led him to

P1MAMerS

begin that business.  He owned a barbershop between 2003 and

2013 in which he made a good living.

Mr. Mercedes, as I've described, has been convicted of

other offenses, and I just want to highlight a couple of

aspects of that history, which weigh in my decision here.

First, the conduct that led to Mr. Mercedes's assault

charge involved an incident in which Mr. Mercedes punched and

kicked his victim.  His victim required medical attention.

That was a violent, in my view, dangerous crime.

And, second, Mr. Mercedes's second conviction for

which he received, as counsel for the United States

characterized it, a very lenient sentence, was for a very

serious offense.  As I understand it from the description,

Mr. Mercedes was using false IDs.  He was arrested.  When he

was arrested, officers recovered three firearms, a bullet

resistant vest, and over 2 pounds of heroin.  And the offense

conduct describes a serious offense.  The points that I want to

emphasize about this offense are twofold.  At first is that the

defendant was engaged in dangerous behavior.  Namely, the sale

of drugs and possession of firearms.  And, second, that the

defendant was given a very lenient sentence.  A sentence that

gave Mr. Mercedes a second chance to not commit additional

crimes.

The United States described the reason for setting

that sentence.  It's a sentence that was just below the

P1MAMerS

1    threshold that would have made the defendant's deportation

2    mandatory.  Mr. Mercedes was given a second chance.  And the

3    fact that he, having been given that, still chose to engage in

4    this dangerous, violent offense, is a great concern to me.  He

5    had a second chance, a chance not to engage in conduct that

6    could harm other people or the community and put himself at

7    risk; and he chose differently.

8         I believe that a meaningful sentence is important in

9    this case in order to impose a just punishment.  As I've

10   already described, in my view, Mr. Mercedes's crime is serious.

11   A lesser sentence would not be just.  I'm also required to

12   consider the deterrent effect both on Mr. Mercedes personally,

13   and also the need for what we call general deterrence.  I

14   believe that the need for personal deterrence in this case is

15   very high.

16        Mr. Mercedes faces several what I'll describe as

17   structural issues.  He is working toward his GED, but he was

18   unable to complete high school.  He has been self-employed in a

19   job that yielded income, I assume.  But Mr. Mercedes was unable

20   to recall how much it paid him at the time of the PSR

21   interview.  Mr. Mercedes committed an offense here that

22   involved an act of violence.  Mr. Mercedes's instinct at that

23   moment was to punch and throw a bottle at his victim.  And

24   Mr. Mercedes brandished a gun, which required that before he

25   ever had this interaction, he get a gun.

P1MAMerS

```
1              Mr. Mercedes drove recklessly.  He almost ran over his
2      victim.  And after violently attacking someone, he headed
3      straight off to a nightclub to party.  Unfortunately, this
4      offense, the nature of the offense indicates to me that
5      Mr. Mercedes does not have sufficient concern about the safety
6      of other people.  Mr. Mercedes committed this offense
7      notwithstanding his prior convictions.  He was given a chance
8      by the New Jersey State Court judge to turn his life around.
9      Instead, he chose to engage in this criminal conduct.  And
10     since he's been in prison, Mr. Mercedes has had a series of
11     disciplinary issues, including for fighting and refusing to
12     obey an order.  This conduct shows to me his continued lack of
13     concern with compliance with rules and the law.  And because
14     Mr. Mercedes has used violence and possessed a firearm, I'm
15     very concerned about the safety to the community should he
16     choose to recidivate.
17             I'm also required to consider the goal of general
18     deterrence.  I hope that by imposing this meaningful sentence,
19     it will be sufficient to dissuade others from committing this
20     offense.  I've considered Mr. Mercedes's ability to use the
21     period of incarceration for educational or vocational training,
22     medical care, or other correctional treatment in the most
23     effective manner.
24             Mr. Mercedes has a number of needs that I hope he'll
25     be able to address through this period of incarceration.
```

P1MAMerS

First, I hope that Mr. Mercedes will take advantage of the

opportunities available to him in prison to learn legitimate

job skills so that he can continue to or to provide for himself

legally when he's released.  And, second, I hope that

Mr. Mercedes will take advantage of the opportunities available

to him to advance his education.

        I've considered the kinds of sentences available.  I

believe that a sentence with a meaningful term of imprisonment.

I've given serious consideration to the guidelines and the

policy statements.  In this case, I believe that a guidelines

sentence is appropriate.  I reach that conclusion after

considering all of the 3553(a) factors and the purposes of

sentencing in light of the facts of this case and the personal

characteristics of this defendant that happens to yield a

guidelines sentence.

        In reaching this decision, I have taken into account

all of the arguments presented by the defendant in support of a

lesser sentence, including the poor conditions at the MDC and

the really tragic fact that Mr. Mercedes was stabbed while

there.  That stabbing, from the Court's perspective, should not

have happened.  I take it and its consequences into account in

establishing this sentence.

        The sentence is driven in part by the need for

personal deterrence, given Mr. Mercedes's criminal history and

conduct in connection with this offense.  And those conditions

P1MAMerS

1    at the MDC reduce the sentence here.  I've taken them into

2    account.  But I don't believe that a further downward variance

3    would be appropriate given my view regarding the need for

4    personal deterrence and to satisfy the other conditions of

5    sentencing established in the statute based on my assessment of

6    all of the facts of this case.

7         All of the arguments presented by the defendant in

8    support of a downward variance have been taken into account in

9    reaching this sentence, including the defendant's family

10   responsibilities, his very challenging childhood, his family

11   obligations, and also the fact that he is required by statute

12   to be deported following his term of incarceration, and the

13   fact that he faces additional incarceration following his --

14   potentially by ICE, following his release from imprisonment

15   following this sentence.

16        I've considered all of those factors in balancing the

17   3553(a) factors, and having done so come to the ultimate

18   conclusion that a sentence that happens to fall within the

19   guidelines is appropriate.  I have considered the need to avoid

20   unwarranted sentence disparities.  Having considered all of the

21   sentencing factors, I believe that the sentence is appropriate

22   for him.  I have considered the need to provide restitution to

23   any victims of the offense.

24        With that, Mr. Mercedes, can I ask you to please rise

25   for the imposition of sentence.

P1MAMerS

1          Thank you, Mr. Mercedes.

2          Mr. Mercedes, it is the judgment of this Court that

3     you be sentenced to 60 months of imprisonment.  Following your

4     term of imprisonment, I am sentencing you to a term of three

5     years of supervised release.  The mandatory conditions of

6     supervised release shall apply.  They are:  The defendant shall

7     not commit another federal, state, or local crime.  The

8     defendant shall not unlawfully possess a controlled substance.

9     The defendant shall refrain from any unlawful use of a

10    controlled substance.  The mandatory drug testing condition is

11    suspended due to the imposition of a special condition

12    requiring drug treatment and testing.  The defendant shall make

13    restitution in accordance with 18, U.S.C., Sections 2248, 2259,

14    2264, 2327, 3363, 3363(a), and 3664.  The defendant shall

15    cooperate in the collection of DNA as directed by the probation

16    officer.  The standard conditions of supervised release 1

17    through 12 shall apply.

18          In addition, the following special conditions shall

19    apply.  Because the defendant possessed a firearm and engaged

20    in a robbery and a carjacking and there is a need to monitor

21    his continuing compliance with the conditions of his supervised

22    release and the law, I order the following:  The defendant

23    shall submit to a search of his person, property, residence,

24    office, vehicle, papers, computers (as defined by 18, United

25    States Code, Section 1030(e)(1)) cell phones and other devices

P1MAMerS

1    or media used for electronic communications, data storage,

2    cloud storage or network storage.  The probation officer may

3    conduct a search under this condition only when there is

4    reasonable suspicion that the defendant has violated a

5    condition of his supervision or committed a new crime and that

6    the areas to be searched contain evidence of this violation or

7    crime.

8          The search must be conducted by a United States

9    Probation Officer, although other law enforcement officers may

10   assist the probation officer.  The search must be conducted at

11   a reasonable time and in a reasonable manner.  Failure to

12   submit to a search may be grounds for revocation of release.

13   The defendant shall warn any other occupants that the premises

14   may be subject to searches pursuant to this condition.

15         Because the defendant has a history of substance

16   abuse, and to ensure the probation department's ability to

17   monitor the defendant's use of elicit substances and to provide

18   him with treatment to help support him and help him avoid

19   recidivism, I'm ordering the following:  The defendant shall

20   participate in an outpatient treatment program approved by the

21   United States Probation Office, which program may include

22   testing to determine whether the defendant has reverted to

23   using drugs or alcohol.  The defendant shall contribute to the

24   cost of services rendered based on his ability to pay and the

25   availability of third-party payments.  The Court authorizes the

P1MAMerS

1    release of available drug treatment evaluations and reports,

2    including the presentence investigation report, to the

3    substance use disorder treatment provider.

4        Because the defendant is illegally residing in the

5    United States, I order the following:  The defendant shall obey

6    the immigration laws and comply with the directives of

7    immigration authorities.

8        The defendant shall be supervised in his district of

9    residence.  There will be no fine because the probation

10   department reports that the defendant is unable to pay one.

11   The defendant must pay to the United States a total special

12   assessment of $200, $100 for each of the crimes of conviction,

13   which shall be due immediately.

14       I have been handed, as I noted, an amended consent

15   preliminary order of forfeiture as to specific property.  I

16   received that order, I am signing it, and I will have it

17   incorporated by reference into the judgment.  In accordance

18   with the terms of that order of forfeiture, I'm ordering the

19   defendant forfeit to the United States any and all firearms and

20   ammunition involved in or used in the offenses charged in

21   Counts One and Two of the information, including but not

22   limited to a black 9-millimeter handgun with serial number

23   778502, one round of 9-millimeter ammunition, and three rounds

24   of .380 ammunition.

25       Counsel for the United States, what's the position of

P1MAMerS

1    the government regarding restitution?

2              MS. CHENG:  The government is not seeking restitution.

3    The one thing I will say, I know your Honor just signed and

4    will incorporate by reference the amended consent preliminary

5    order of forfeiture.  Just to give additional explanation, the

6    amended consent preliminary order of forfeiture contains

7    additional ammunition that was inadvertently omitted from the

8    prior preliminary order of forfeiture.

9              THE COURT:  Thank you.  Very good.

10             So, counsel, do either of you know of any legal reason

11   why this sentence shall not be imposed as stated?

12             Counsel for the United States.

13             MS. CHENG:  No, your Honor.

14             THE COURT:  Thank you.

15             Counsel.

16             MS. FLORIO:  No, your Honor.

17             THE COURT:  Thank you.

18             The sentence as stated is imposed.  I find that

19   sentence to be sufficient but not greater than necessary to

20   comply with the purposes of sentencing set forth in 18, United

21   States Code, Section 3553(a).

22             Thank you very much, Mr. Mercedes.  You can be seated.

23             Mr. Mercedes, you have the right to appeal your

24   conviction and sentence except to whatever extent you may have

25   validly waived that right as part of your plea agreement.  The

P1MAMerS

notice of appeal must be filed within 14 days of the judgment

of conviction.  If you're not able to pay the costs of an

appeal, you may apply for leave to appeal *in forma pauperis*.

If you request, the clerk of court will prepare and file a

notice of appeal on your behalf.

          Counsel, are there any other applications at this

time?

          First counsel for the United States.

          MS. CHENG:  I don't believe there are any underlying

open counts, but to the extent there are, the government moves

to dismiss them.

          THE COURT:  Thank you.

          To the extent there are any open underlying counts, I

am dismissing them.

          Counsel for defendant, let me hear from you.

          MS. FLORIO:  Yes, your Honor.  I have an application

that Mr. Mercedes be placed close to New York so he can be --

he could visit with his children.  I am specifically asking for

Fort Dix.  That would be his preference.

          THE COURT:  Thank you.

          MS. FLORIO:  Thank you.

          THE COURT:  I am happy to include a recommendation in

the judgment that the defendant be designated to a facility

close to New York City to facilitate family visits.  And I'm

happy to include a recommendation that the defendant be

P1MAMerS

1    designated to Fort Dix to the extent that he's eligible to be

2    there consistent with his --

3              MS. FLORIO:  And, your Honor -- I'm sorry.

4              THE COURT:  -- consistent with his security

5    designation.

6              Go ahead, counsel.

7              MS. FLORIO:  Your Honor, also with respect to his drug

8    problem, whatever drug program would be available to him in

9    jail, if he would qualify for RDAP, I would actually recommend

10   that.

11             THE COURT:  Thank you.  I'm happy to include in the

12   judgment a recommendation that the defendant be permitted to

13   participate in the RDAP program to the extent that he is

14   eligible to do so.

15             MS. FLORIO:  Thank you, your Honor.

16             THE COURT:  Very good.  Thank you very much.

17             Thank you all very much.  This proceeding is

18   adjourned.

19             (Adjourned)

20

21

22

23

24

25